UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID J. COTA,<br><br>                    Plaintiff,<br>v.<br><br>L.E. SCRIBNER, et al.,<br><br>                    Defendants. | Case No. 09cv2507-AJB (BLM)<br><br>**REPORT AND RECOMMENDATION GRANTING DEFENDANTS' MOTION TO DISMISS**<br><br>[ECF No. 51] |

This Report and Recommendation is submitted to United States District Judge Anthony J. Battaglia pursuant to 28 U.S.C. § 636(b) and Local Civil Rules 72.1(c) and 72.3(f) of the United States District Court for the Southern District of California.

On November 6, 2009, Plaintiff David J. Cota, a state prisoner proceeding *pro se* and *in forma pauperis*, filed this civil rights suit against the warden at Calipatria State Prison, L.E. Scribner, and five officers, R. Bishop, J. Crabtree, E. Duarte, G. Stratton, and M. Tamayo, under 42 U.S.C. § 1983. ECF No. 1. Plaintiff asserted claims under the First Amendment, Eighth Amendment, and Fourteenth Amendment, as well as a separate conspiracy claim. Id. at 16-32. Defendants filed a motion to dismiss (ECF No. 20) and Plaintiff opposed the motion (ECF No. 34). On November 10, 2010, this Court issued a Report and Recommendation for an Order Granting in Part and Denying in Part Defendants' Motion to Dismiss. ECF No. 35. On December 8, 2010, Judge Benitez, noting a lack of any written objections to the Report and Recommendation, issued an Order Adopting the Report and Recommendation in its entirety. ECF No. 36.

1    Plaintiff, however, filed Objections to the Report and Recommendation on December 10,

2    2010 (ECF No. 39), prompting Judge Benitez to allow Defendants to file a reply (ECF No. 40),

3    which they did (ECF No. 41).  On February 14, 2011, Judge Benitez issued an Order Adopting

4    the Report and Recommendation in its entirety over Plaintiff's objections, thereby granting in part

5    and denying in part Defendants' motion to dismiss.  ECF No. 42.  Plaintiff was granted leave to

6    amend his Eighth Amendment Claim, as well as his Fourteenth Amendment equal protection

7    claim against Defendants Bishop, Crabtree, Duarte, Stratton, and Tamayo.  ECF No. 35 at 27;

8    ECF No. 42 at 2-3.  Plaintiff's First Amendment freedom of association claim was dismissed

9    without leave to amend, but all of Plaintiff's other claims survived.  ECF Nos. 35 at 27; ECF No.

10   42 at 2-3.

11    On March 30, 2011, Plaintiff filed a First Amended Complaint ("FAC") re-alleging all of the

12   claims asserted in his original complaint, except the First Amendment freedom of association

13   claim.  ECF No. 50.  On April 12, 2011, Defendants filed a motion to dismiss the Eighth

14   Amendment claim and the Fourteenth Amendment equal protection claim against Defendants

15   Bishop, Crabtree, Duarte, Stratton, and Tamayo ("Defs.' Mem.").  ECF No. 51.  Plaintiff opposed

16   the motion ("Pl.'s Opp'n") (ECF No. 53), Defendants filed a reply ("Defs.' Reply") (ECF No. 54),

17   and this Court took the matter under submission (ECF No. 52).

18    The Court has considered Plaintiff's FAC, Defendants' Motion to Dismiss, Plaintiff's

19   Opposition, Defendants' Reply, and all supporting documents submitted by the parties.  For the

20   reasons set forth below, this Court **RECOMMENDS** that Defendants' Motion to Dismiss be

21   **GRANTED**.

22                                   **FACTUAL BACKGROUND**

23    Plaintiff is a prisoner in the custody of the California Department of Corrections and

24   Rehabilitation ("CDCR"), currently housed within the Security Housing Unit ("SHU") at Pelican Bay

25   State Prison.  FAC at 2.  In 1995, Plaintiff was validated as an associate of the Mexican Mafia

26   prison gang, but in 2000, the Director's Review Board ("DRB") determined Plaintiff's gang status

27   to be "inactive."  Id. at 2-3.  In April 2002, Plaintiff was transferred to Calipatria State Prison, and

28   he alleges that two events at Calipatria led prison officials to retaliate against the prison's

1  Hispanic inmates.  Id. at 3.  Plaintiff describes the first event as simply an "incident" involving

2  Hispanic inmates and prison staff on August 18, 2005.[1]  Id.  He describes the second event as

3  an assault on a staff member on March 20, 2006.  Id.  Plaintiff alleges that a white inmate

4  perpetrated the March assault, but prison officials "falsely blamed [it] on Hispanic inmates." Id.

5      On April 29, 2006, Investigative Services Unit ("ISU") officers took Plaintiff outside the

6  housing unit for questioning by officers from the Special Security Unit ("SSU").  Id.  During the

7  interview, an unnamed SSU officer allegedly told Plaintiff that Defendant Scribner, the warden

8  at Calipatria, "requested to have all 'DRB' inactive gang status Hispanic inmates be [sic] removed

9  from the general population because of the staff assaults."  Id.  Plaintiff told the officers that he

10  had no problems with prison staff, he had received five laudatory reports from correctional

11  officers in February 2006, and he was working with a correctional counselor on his Parole

12  Hearing Report.  Id. at 4.

13      Plaintiff alleges that on May 1, 2006, Defendant Bishop authored three false reports

14  against Plaintiff in compliance with, and in furtherance of, Defendant Scribner's directive to "'find

15  something' (do whatever it took—including authoring false reports/charges) in order to get the

16  Hispanic DRB inactive gang status inmates off the general population yard and re-validate them."

17  Id. at 6.   The reports authored by Defendant Bishop, a correctional officer in the Gang

18  Intelligence Operations Unit, state that the following items were discovered in Plaintiff's cell: (1)

19  two birthday cards containing a symbol used to express loyalty to the Mexican Mafia; (2) a

20  drawing by a well known member of the Mexican Mafia; and (3) a coded address book.  FAC Ex.

21  H.  Plaintiff asserts that: (1) he did not draw the alleged gang symbol inside the birthday card

22  given to him and he was unaware of its meaning; (2) the other birthday card and the drawing

23  by the gang member belonged to another prisoner; and (3) he coded the address book to

24  protect family and friends in case of loss, theft, or misplacement, not to hide gang activity.  FAC

25  at 8-9.

26      On June 2, 2006, two officers, including Defendant Crabtree, a sergeant with the ISU,

27  approached Plaintiff in the yard for a pre-validation interview.  Id. at 9-10.  Plaintiff alleges that

28

---

[1] Plaintiff, in an administrative appeal, referred to this incident as a "riot."  FAC Ex. T, at 3.

he had prepared a written statement regarding the material being used against him and had the statement in his cell, but Defendant Crabtree did not offer to get the statement from Plaintiff's cell and Plaintiff could not return to his cell unless a prison guard escorted him. Id. at 10. When Plaintiff asked Defendant Crabtree about the alleged gang symbol in the card, the officer allegedly told him that it was "a 'wobbler' as a prison gang symbol, but that it was being used against Plaintiff in that fashion anyway." Id. Plaintiff alleges that Defendant Crabtree then walked away, refusing to take his statement. Id.

At some point in July 2006, Plaintiff received a report authored by Defendant Duarte, a gang investigator with the ISU. Id. at 10-11; FAC Ex. I. The report summarized the prison's investigation into Plaintiff's gang status and indicated that the prison would be requesting that the Office of Correctional Safety revalidate Plaintiff as a gang associate of the Mexican Mafia. FAC Ex. I. Defendant Duarte claimed that Plaintiff possessed a mail drop address utilized by an active gang member, and Defendant Duarte also claimed that he contacted Plaintiff for a pre-validation interview, but Plaintiff refused to be interviewed. Id. Plaintiff alleges that Defendant Duarte's report was false, omitted key facts, and contained manipulated statements. FAC at 11. On July 27, 2006, the Office of Correctional Safety revalidated Plaintiff as an associate of the Mexican Mafia prison gang. Id. at 10.

On July 31, 2006, Plaintiff filed an administrative grievance that accused Defendant Duarte of writing his report with "malice intent and wreakless [sic] disregard for the truth." FAC Ex. P, at 1. Plaintiff stated that his address book contained no prison gang addresses and that Defendant Duarte never came to speak with him—Defendant Crabtree did. Id. at 3. Plaintiff alleges that when he asked Defendant Stratton, the initial reviewer[2] of his grievance, why he was removed from the yard, Defendant Stratton "stated that the warden wanted all DRB inactive gang status Hispanic inmates off the yard." FAC at 12. Plaintiff alleges that he told Defendant Stratton "that he was doing a positive program, that his prison file reflects no current gang activity and that [he] had been disciplinary free close to ten (10) years." Id. Plaintiff alleges that

---

[2] Plaintiff's grievance bypassed the Informal, Formal, and First Levels of Review. FAC Ex. P, at 1-2. Defendant Stratton interviewed Plaintiff regarding his appeal at the Second Level of Review. Id. at 2, 4.

1  Defendant Stratton stated that "all of Plaintiff's positive work and behavior did not matter," and

2  Defendant Stratton denied Plaintiff's appeal on December 26, 2006.  Id. at 12-13; FAC Ex. P, at

3  1-2, 4.  Plaintiff pursued his grievance through the prison system's final level of review, the

4  Director's Level, where it was denied on April 16, 2007.  FAC Ex. P, at 2, 7-8.

5      In March 2007, Plaintiff became aware of another staff report concerning his 2006 gang

6  investigation.  FAC at 13.  Plaintiff alleges that this report, authored by Defendant Tamayo,

7  "contained the same false, manipulated and omitted information as [Defendant] Duarte's

8  report . . . ."  Id.  Plaintiff alleges that Defendant Tamayo knowingly made these false and

9  manipulated statements in his report, which stressed that Plaintiff "has demonstrated he is an

10  active associate of the [Mexican Mafia] prison gang and [Plaintiff's] status should be updated to

11  that of validated Associate of the [Mexican Mafia] prison gang."  Id.; FAC Ex. J.

12      Plaintiff alleges that the prison officials' unlawful actions caused him to be removed from

13  general population, put into administrative segregation, re-validated as a Mexican Mafia prison

14  gang associate, and placed into solitary confinement for an indefinite term.  FAC at 5-7, 14.

15  Plaintiff alleges that the result is a grave loss of privileges and loss of a parole date, thereby

16  constituting "a harsh punishment" in "a very harsh environment."  Id. at 7.

17                                  **DISCUSSION**

18      To state a viable claim under § 1983, a plaintiff must allege that (1) a person acting under

19  the color of state law committed the conduct at issue, and (2) the conduct violated a right

20  provided by the Constitution or laws of the United States.  See, e.g., West v. Atkins, 487 U.S. 42,

21  48 (1988).  A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal

22  sufficiency of a complaint.  See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). To survive

23  such a motion, a plaintiff must set forth "enough facts to state a claim to relief that is plausible

24  on its face."  Id. at 570.  Naked assertions "devoid of further factual enhancement" are

25  insufficient.  Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (citation and internal quotation

26  marks omitted); see also Moss v. United States Secret Serv., 572 F.3d 962, 969 (9th Cir. 2009).

27  In evaluating a claim, the court should use judicial experience and common sense as its guide.

28  Iqbal, 129 S. Ct. at 1950.

At this stage of the litigation, a court must accept as true all factual allegations in the complaint, Erickson v. Pardus, 551 U.S. 89, 93-94 (2007), but it "need not accept as true conclusory allegations, nor make unwarranted deductions or unreasonable inferences," In re Gilead Scis. Sec. Litig., 536 F.3d 1049, 1057 (9th Cir. 2008) (citation omitted). In cases where the plaintiff is proceeding without counsel, and particularly in civil rights cases, a court should construe the pleadings liberally. Hebbe v. Pliler, 627 F.3d 338, 342 (9th Cir. 2010); see also Ferdik v. Bonzelet, 963 F.2d 1258, 1261 (9th Cir. 1992). The court may consider attachments to the complaint as part of the complaint. See United States v. Ritchie, 342 F.3d 903, 908 (9th Cir. 2003).

**A. First Amendment – Freedom of Association**

Pursuant to Judge Benitez's adoption of this Court's previous Report and Recommendation in its entirety, Plaintiff's First Amendment free association claim was dismissed without leave to amend. ECF No. 35 at 15-16, 27; ECF No. 42 at 2. However, in their instant motion to dismiss, Defendants "move for dismissal of this claim out of an abundance of caution," asserting that Plaintiff's FAC fails to plead a claim for freedom of association and requesting that the Court "maintain its ruling dismissing Plaintiff's claim . . . with prejudice." Defs.' Mem. at 8. Defendants correctly point out that Plaintiff's FAC contains a heading for a fourth cause of action entitled, "First Amendmend [sic] - Right to Association," but that there is no text under the heading. Id.; FAC at 27. Plaintiff acknowledges that his freedom of association claim was dismissed without leave to amend, and he explains that he "just put in the 'caption' of that claim" in order to preserve that claim for appeal, "if need be out of 'an abundance' of caution." Pl.'s Opp'n at 2. Plaintiff, however, "denies the defendant[s'] allegation that [this claim] should be dismissed 'with prejudice.'" Id. Plaintiff seemingly fails to understand that by not granting Plaintiff leave to amend his freedom of association claim, Judge Benitez's Order dismissed Plaintiff's freedom of association claim with prejudice. ECF No. 42 at 2. Accordingly, the Court **RECOMMENDS** that Defendants' Motion to Dismiss Plaintiff's freedom of association claim—to the extent that there is such a claim in Plaintiff's FAC—be **GRANTED**.

///

**B. Eighth Amendment**

The Court granted Plaintiff leave to amend his Eighth Amendment claim "to add specific facts establishing cruel and unusual treatment and the requisite mental state for each defendant." ECF No. 35 at 18; see ECF No. 42 at 3. Plaintiff asserts that Defendants violated his Eighth Amendment right to be free from cruel and unusual punishment by falsifying reports against him and wrongfully removing him from the general population. FAC at 17-21. Plaintiff alleges that Defendants Scribner and Bishop knew Plaintiff was "a model inmate," yet they proceeded to file their false reports and unlawfully retaliate against Plaintiff. Id. at 18-19. Plaintiff argues that "[i]t is cruel and unusual treatment and punishment to falsely accuse[] Plaintiff for actions he did not commit, or crimes he was not involved in or material he did not own," and he requests that the Court establish procedural safeguards "so that prison officials can no longer trample upon an innocent inmate's rights . . . ." Id. at 19, 21. Defendants argue that Plaintiff's FAC does not cure the deficiencies contained in his initial complaint because Plaintiff fails to allege "a deprivation of the human necessities that must form the basis of an Eighth Amendment claim." Defs.' Mem. at 5.

As the Court explained in its previous Report and Recommendation (ECF No. 35), the Supreme Court has held that the unnecessary and wanton infliction of pain upon prisoners violates the Eighth Amendment. Hope v. Pelzer, 536 U.S. 730, 737 (2002). To challenge his conditions of confinement, a prisoner must satisfy a two-part test. Hearns v. Terhune, 413 F.3d 1036, 1042 (9th Cir. 2005). First, the plaintiff "must make an objective showing that the deprivation was 'sufficiently serious' to form the basis for an Eighth Amendment violation." Id. (citing Wilson v. Seiter, 501 U.S. 294, 298 (1991)). Second, the plaintiff "must make a subjective showing that the prison official acted 'with a sufficiently culpable state of mind.'" Id. The Ninth Circuit has held that "[p]rison officials have a duty to ensure that prisoners are provided adequate shelter, food, clothing, sanitation, medical care, and personal safety." Johnson v. Lewis, 217 F.3d 726, 731 (9th Cir. 2000) (citations omitted). However, the basis of an Eighth Amendment violation is formed only when "those deprivations denying 'the minimal civilized measure of life's necessities' are sufficiently grave . . . ." Id. (citations omitted); see also Hearns,

413 F.3d at 1042-43 (holding that a prisoner stated a viable Eighth Amendment claim by alleging that an institution failed to provide adequate drinking water in 100-plus degree heat); Akao v. Shimoda, 832 F.2d 119, 120 (9th Cir. 1987) (holding that "an allegation of overcrowding without more does not state a claim" under the Eighth Amendment, but the scale tips the other way when overcrowding "engenders violence, tension, and psychiatric problems").  Thus, simple placement in segregated housing, even for an indeterminate period, does not by itself constitute an Eighth Amendment violation.  Toussaint v. Yockey, 722 F.2d 1490, 1494 n.6 (9th Cir. 1984).  However, "conditions of confinement may establish an Eighth Amendment violation 'in combination,' even when each would not do so alone, 'when they have a mutually enforcing effect that produces the deprivation of a single, identifiable human need.'"  Madrid v. Gomez, 889 F. Supp. 1146, 1265 n.209 (N.D. Cal. 1995) (quoting Wilson, 501 U.S. at 304).

Plaintiff asserts that his FAC satisfies the "objective showing" relevant to an Eighth Amendment claim because the "deprivation" he suffered is the loss of a parole date, which he claims is "sufficiently serious to state a claim."  Pl.'s Opp'n at 6.  Plaintiff argues that Defendants' "collusion of false/manipulated reports" caused him to be placed in the SHU at Pelican Bay, and "[t]he Parole Board does not give parole dates to life inmates that are in the 'SHU.'"  Id.  Plaintiff cites several cases in support of his contention that his placement in the SHU and concomitant loss of a parole date violates the Eighth Amendment's prohibition on cruel and unusual punishment, but each case Plaintiff cites relates to a due process claim and not an Eighth Amendment claim.[3]  Plaintiff therefore offers no binding or persuasive authority to support his argument that mere placement in the SHU and loss of a parole date constitutes cruel and unusual punishment in violation of the Eighth Amendment, and the Court is unaware of any such precedent.  In fact, the Supreme Court recently reiterated that "[t]here is no right under the

---

[3] Plaintiff cites Wilkinson v. Austin, 545 U.S. 209 (2005); Guizar v. Woodford, 282 Fed. Appx. 551 (9th Cir. 2008); and Snyder v. Archie, an unpublished case filed in February 1998 in the Northern District of California, which is mentioned in Koch v. Lewis, 96 F. Supp. 2d 949, 963 n.19 (D. Ariz. 2000).  However, the reasoning and holdings in those cases have neither the intent nor the effect that Plaintiff attributes to them.  Plaintiff's reliance on Wilkinson is misplaced because he conflates a Fourteenth Amendment Due Process Clause "significant and atypical hardship" analysis with an Eighth Amendment "cruel and unusual punishment" analysis.  Furthermore, Plaintiff purports to quote Guizar, but the quotation upon which he relies actually comes from Gray v. Woodford, No. 05CV1475, 2007 WL 2790588, at *10 (S.D. Cal. Sept. 25, 2007).  Regardless, both Guizar and Gray, like Wilkinson, concern a due process analysis.  Similarly, to the extent that Snyder is discussed in Koch, it is apparent that Snyder also centers on a liberty interest and due process analysis.

1  Federal Constitution to be conditionally released before the expiration of a valid sentence, and
2  the States are under no duty to offer parole to their prisoners." Swarthout v. Cooke, 131 S. Ct.
3  859, 862 (2011) (per curiam) (citing Greenholtz v. Inmates of Neb. Penal and Corr. Complex, 442
4  U.S. 1, 7 (1979)).  Moreover, the Ninth Circuit has determined that "[e]ven an indeterminate
5  sentence to punitive isolation does not without more constitute cruel and unusual punishment."
6  Toussaint, 722 F.2d at 1494 n.6.

7       Plaintiff argues that another serious deprivation that satisfies the requisite objective
8  showing "is in the form of daily life within the prison context." Pl.'s Opp'n at 7.  Plaintiff states
9  that while in the general population, he held a job through which he earned an income and he
10 attended substance addiction meetings pursuant to the Parole Board's requirements.  Id.
11 Plaintiff further explains that in general population he enjoyed greater freedom, more privileges,
12 and more contact visits, whereas in the SHU, he is "locked in his cell 22 ½ hours per day." Id.
13 Although Plaintiff's placement in the SHU may, in fact, deprive him of certain opportunities he
14 could otherwise pursue if he was in the general population, Plaintiff fails to articulate a "denial
15 of the minimal civilized measure of life's necessities" in the SHU. Foster v. Runnels, 554 F.3d
16 807, 812 (9th Cir. 2009) (quoting Farmer v. Brennan, 511 U.S. 825, 834 (1994)) (internal
17 quotation marks omitted).  Instead, Plaintiff describes a loss of certain "educational/vocational
18 opportunities . . . which would go towards his rehabilitative efforts and parole and life pursuits."
19 Pl.'s Opp'n at 7.  Because Plaintiff does not contend that while in the SHU he has been deprived
20 of adequate food, clothing, shelter, sanitation, medical care, or personal safety, he fails to satisfy
21 the "objective showing" pertinent to an Eighth Amendment claim. See Farmer, 511 U.S. at 832;
22 Johnson, 217 F.3d at 731-32; see also Gonzales v. Cal. Dep't of Corr., --- F. Supp. 2d ---, 2011
23 WL 1045228, at *8 (N.D. Cal. Mar. 22, 2011) ("[T]he overall conditions of the SHU [at Pelican
24 Bay] do not violate the Eighth Amendment for the non-mentally ill inmates therein.") (citing
25 Madrid, 889 F. Supp. at 1227-30, 1260-65).  To the extent that prison conditions "are restrictive
26 and even harsh, they are a part of the penalty that criminal offenders pay for their offenses
27 against society." Rhodes v. Chapman, 452 U.S. 337, 347 (1981); see also Keenan v. Hall,
28 83 F.3d 1083, 1092 (9th Cir. 1996) ("[T]here is no constitutional right to 'access to a particular

1  visitor.'") (quoting <u>Ky. Dep't of Corr. v. Thompson</u>, 490 U.S. 454, 461 (1989)).

2      Plaintiff further contends that his FAC satisfies the "subjective showing" relevant to

3  an Eighth Amendment claim because Defendants Scribner and Bishop acted with a sufficiently

4  culpable state of mind.  Pl.'s Opp'n at 8-9.  Plaintiff claims that "Defendant Scribner did wilfully,

5  maliciously and with cruel purpose, mastermind the illegal removal of Plaintiff from general

6  population under false pretences [sic] and false charges of illegal conduct."  FAC at 17.  Plaintiff

7  further alleges that Defendant Scribner ordered Defendant Bishop "to carry out these illegal and

8  cruel treatments and actions against Plaintiff" and Defendant Bishop did so "maliciously, wilfully

9  and for the purpose of causing cruel punishment to Plaintiff."  <u>Id.</u>  Plaintiff asserts that Defendant

10 Scribner and Defendant Bishop "knew it was wrong to target an innocent person (Plaintiff)," but

11 they did so anyway, which "proves their culpable mental state."  Pl.'s Opp'n at 8.

12     Although Plaintiff repeatedly uses the words, "cruel," "unusual," and "punishment" in

13 articulating his Eighth Amendment claim, and Plaintiff asserts that Defendants Scribner and

14 Bishop acted "maliciously" and "wilfully," Plaintiff fails to support his claims with non-conclusory

15 factual statements showing that he has or will be deprived of "'the minimal civilized measure of

16 life's necessities'" in SHU, let alone that Defendants were aware of a substantial risk that he

17 would be so deprived.  <u>Farmer</u>, 511 U.S. at 834 (quoting <u>Rhodes</u>, 452 U.S. at 347); <u>see also</u>

18 <u>Throop v. Sec'y of Corr.</u>, Slip Copy, 2010 WL 3418353, at *6-8 (S.D. Cal. Aug. 27, 2010)

19 (dismissing inmate's claim that correctional officers violated the Eighth Amendment by "placing

20 [him] in SHU despite their knowledge that [the inmate] is not an active member or associate of

21 [the Mexican Mafia]" because the inmate's complaint "contains no facts which indicate that [the

22 inmate] was deprived of life's necessities or that he was otherwise subjected to a substantial risk

23 of harm") (internal quotation marks omitted).  Despite Plaintiff's insistence that Defendants

24 Scribner and Bishop wrongfully placed him in the SHU, Plaintiff fails to set forth specific facts to

25 support a plausible claim that he faced or faces a sufficiently serious risk of harm in the SHU or

26 that Defendants Scribner or Bishop were aware that their actions subjected Plaintiff to a serious

27 risk of harm.  <u>See Twombly</u>, 550 U.S. at 570; <u>Wilson</u>, 501 U.S. at 303.  Plaintiff has therefore

28 failed to establish the objective as well as the subjective components of an Eighth Amendment

1    prison conditions claim.  See Hearns, 413 F.3d at 1042.

2          Plaintiff, however, contends that his Eighth Amendment claim need not be limited to the

3    "conditions of confinement" and insists that he "can assert a cruel and unusual punishment claim

4    against [Defendants]" because the Defendants' actions of "falsifying/ manipulating reports

5    against [him], was in fact and for the purpose of retaliatory punishment."  Pl.'s Opp'n at 5.

6    Plaintiff asserts that:

7          [R]etaliatory accusation[s] by guards against prisoners, can and do arise for a
           variety of reasons.  Sometimes they fall within the purview of the First Amend-
8          ment.  Sometimes the "evidentiary" value of the accusations falls within the Due
           Process Clause.  But there is no protection for a prisoner against false retaliatory
9          accusations by guards when they come for/under some other reason.

10   Id. at 10.  Accordingly, Plaintiff argues that he "can plead an Eighth Amendment claim based

11   [on] false retaliatory reports as a form of cruel and unusual punishment."  Id. at 12.  Plaintiff

12   cites Johnson v. Lewis, 217 F.3d 726, 731 (9th Cir. 2000) for his argument that "the cruel and

13   unusual umbrella does not limit an inmate[']s claim to the 'conditions of confinement' such as

14   'basic necessities,' etc; as the [D]efendant[s] allege."  Pl.'s Opp'n at 5.  Plaintiff contends that

15   the reasoning and holding in Johnson "opened up the [Eighth] Amendment[']s application as the

16   need arises in law," and, as a result, "the Supreme Court is in fact setting forth that Plaintiff has

17   a legal basis for an Eighth Amendment claim."  Id.  Although passionate, Plaintiff's argument is

18   unavailing.  As an initial matter, Johnson is a Ninth Circuit Court of Appeal opinion, not a

19   Supreme Court opinion.  Moreover, in Johnson, the Ninth Circuit held that "[t]he Eighth

20   Amendment does not tolerate prison officials' deliberate indifference, in the absence of exigent

21   circumstances, to substantial deprivations of adequate shelter, food, drinking water, and

22   sanitation."  217 F.3d at 735.  Thus, contrary to Plaintiff's assertions otherwise, Johnson dealt

23   squarely with inmates' claims regarding "severe deprivations of basic human necessities . . . ."

24   Id.  Consequently,  Plaintiff offers no binding or persuasive authority to support his argument

25   that false or manipulated reports constitute cruel and unusual punishment in violation of the

26   Eighth Amendment, and the Court is unaware of any such precedent.[4]

27

28         [4] Plaintiff also cites Hines v. Gomez, 108 F.3d 265 (9th Cir. 1997) as support for his proposition that he can
     plead an Eighth Amendment claim based on false retaliatory reports as a form of cruel and unusual punishment.  FAC
     at 19-21; Pl.'s Opp'n at 9-12.  However, Hines, which is premised upon a First Amendment retaliation claim, provides

1       In this Court's previous Report and Recommendation, Plaintiff was given the legal

2 standards for stating an Eighth Amendment claim and Plaintiff was also specifically informed of

3 the deficiencies in his claim against Defendants.  ECF No. 35 at 16-18.  Plaintiff's FAC has done

4 nothing to meaningfully address the deficiencies previously identified by the Court.  As such, the

5 Court finds that Plaintiff's Eighth Amendment claim is not capable of being remedied by granting

6 any further leave to amend.  <u>See</u> <u>Balistreri v. Pacifica Police Dep't</u>, 901 F.2d 696, 701 (9th Cir.

7 1990) ("Leave to amend should be granted if it appears at all possible that the plaintiff can

8 correct the defect.") (citation and internal quotation marks omitted).  The Court therefore

9 **RECOMMENDS** that Defendants' Motion to Dismiss Plaintiff's Eighth Amendment claim be

10 **GRANTED** without leave to amend.

11 **C. Fourteenth Amendment – Equal Protection**

12       The Court granted Plaintiff leave to amend his Fourteenth Amendment equal protection

13 claim against Defendants Bishop, Crabtree, Duarte, Stratton, and Tamayo because Plaintiff failed

14 to link these Defendants to Plaintiff's allegedly unconstitutional removal from the general

15 population.  ECF No. 35 at 22-24, 27; <u>see</u> ECF No. 42 at 3.[5]  Defendants argue that Plaintiff fails

16 to allege in his FAC any act of discrimination against these Defendants that supports a claim

17 under the Equal Protection Clause.  Defs.' Mem. at 6.  In response, Plaintiff states that he "has

18 not alleged a claim of Equal Protection against [D]efendants Crabtree, Duarte, Stratton, Bishop

19 or Tamayo in the FAC because Judge Benitez adopted the Magistrate's Report and Recommenda-

20 tion on this claim over Plaintiff's objections; Plaintiff limited this equal protection claim to

21 Defendant Scribner."  Pl.'s Opp'n at 2-3.

22       Although Plaintiff is correct in his belief that Judge Benitez adopted this Court's Report and

23 Recommendation over Plaintiff's objections, Judge Benitez's Order states: "Plaintiff's Equal

24 Protection claim is dismissed with leave to amend as to Defendant Bishop" and "Plaintiff's Equal

25 Protection claim is also dismissed with leave to amend [as] to the other Defendants, except

---

no authority for Plaintiff's argument.

    [5] In contrast, the Court found that Plaintiff properly alleged, with the requisite specificity, that Defendant Scribner discriminated against Plaintiff on prohibited grounds.  ECF No. 35 at 22-24, 27; <u>see</u> ECF No. 42 at 3.  The Court therefore denied Defendants' Motion to Dismiss Plaintiff's Fourteenth Amendment equal protection claim against Defendant Scribner.  ECF No. 35 at 27; ECF No. 42 at 3.

Defendant Scribner." ECF No. 42 at 3. That is, Plaintiff was given leave to revise his equal protection claim as to all Defendants *except* Defendant Scribner; Plaintiff's equal protection claim against Defendant Scribner did not require revision because Defendants' Motion to Dismiss Plaintiff's equal protection claim against Defendant Scribner was denied. ECF No. 35 at 27; ECF No. 42 at 3. However, Plaintiff seemingly misread or misinterpreted Judge Benitez's Order such that he amended his equal protection claim as to Defendant Scribner and abandoned his equal protection claim as to all other Defendants. Seizing upon Plaintiff's misconstrual, Defendants, in their reply, state "Plaintiff [] concedes that he does not allege a claim for violation of the Equal Protection Clause against Defendants Crabtree, Duarte, Stratton, Bishop, or Tamayo." Defs.' Reply at 1.

As the Court explained in its previous Report and Recommendation (ECF No. 35), the Equal Protection Clause of the Fourteenth Amendment protects prisoners from, among other things, "invidious discrimination based on race." Wolff v. McDonnell, 418 U.S. 539, 556 (1974). The clause "commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985). The Ninth Circuit has held that "§ 1983 claims based on Equal Protection violations must plead intentional unlawful discrimination or allege facts that are at least susceptible of an inference of discriminatory intent." Monteiro v. Tempe Union High Sch. Dist., 158 F.3d 1022, 1026 (9th Cir. 1998) (citations omitted); see also Serrano v. Francis, 345 F.3d 1071, 1081-83 (9th Cir. 2003) (holding that a prison officer's racially tinged remarks to an inmate during a disciplinary hearing created a genuine issue of material fact about the officer's potentially discriminatory motives). Discriminatory intent implies that the decision-maker "selected or reaffirmed a particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group." Pers. Adm'r of Mass. v. Feeney, 442 U.S. 256, 279 (1979) (footnote omitted).

Upon reviewing Plaintiff's FAC, the Court finds that Plaintiff does indeed fail to state a claim for relief under the Equal Protection Clause against Defendants Bishop, Crabtree, Duarte,

Stratton, and Tamayo because Plaintiff focuses his equal protection claim solely against Defendant Scribner.  See FAC at 21-27.  Although Plaintiff alleges that Defendant Scribner "intentionally discriminated against Plaintiff because of his race," Plaintiff only mentions the other Defendants by name in his due process argument.  See id. at 22-27.  As a result, the Court is compelled to **RECOMMEND** that Defendants' Motion to Dismiss Plaintiff's equal protection claim against Defendants Bishop, Crabtree, Duarte, Stratton, and Tamayo be **GRANTED**.  However, because the Court finds that Plaintiff failed to amend his equal protection claim against these Defendants as a result of misreading or misinterpreting Judge Benitez's Order, the Court **RECOMMENDS** that Defendants' Motion to Dismiss Plaintiff's equal protection claim against Defendants Bishop, Crabtree, Duarte, Stratton, and Tamayo be **GRANTED** with leave to amend.[6] See Ramirez v. Galaza, 334 F.3d 850, 861 (9th Cir. 2003) ("Leave to amend should be granted unless the pleading could not possibly be cured by the allegation of other facts, and should be granted more liberally to pro se plaintiffs.") (citation and internal quotation marks omitted).

### SUMMARY OF RECOMMENDATIONS

To summarize the foregoing, the Court recommends that:

- Defendants' Motion to Dismiss Plaintiff's First Amendment freedom of association claim be **GRANTED WITHOUT LEAVE TO AMEND**;

- Defendants' Motion to Dismiss Plaintiff's Eighth Amendment claim be **GRANTED WITHOUT LEAVE TO AMEND**; and

- Defendants' Motion to Dismiss Plaintiff's Fourteenth Amendment equal protection claim against Defendants Bishop, Crabtree, Duarte, Stratton, and Tamayo be **GRANTED WITH LEAVE TO AMEND**.

### CONCLUSION

For all the foregoing reasons, **IT IS HEREBY RECOMMENDED** that the District Court issue an Order: (1) approving and adopting this Report and Recommendation, and (2) **GRANTING** Defendants' Motion to Dismiss.

---

[6] Plaintiff's equal protection claim against Defendant Scribner survived Defendants' initial motion to dismiss. ECF No. 35 at 22-24, 27; ECF No. 42 at 3.  Because Defendants did not seek to dismiss Plaintiff's equal protection claim against Defendant Scribner in their instant motion to dismiss, the Court does not address the merits of that claim.

**IT IS HEREBY ORDERED** that any written objections to this Report must be filed with the Court and served on all parties **no later than July 18, 2011**.  The document should be captioned "Objections to Report and Recommendation."

**IT IS FURTHER ORDERED** that any reply to the Objections shall be filed with the Court and served on all parties **no later than August 1, 2011**.  The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's order.  See Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998).

**IT IS SO ORDERED.**

DATED:  June 27, 2011

BARBARA L. MAJOR
United States Magistrate Judge